IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**DAVID WOJCIEHOWICZ,**
**individually and on behalf of**
**all those similarly situated,**

      Plaintiff,

v.                                CIVIL ACTION NO.  2:20-cv-00355

**THE CHEMOURS COMPANY**
**FC, LLC,**

      **Defendant.**

## COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT

Plaintiff, David Wojciehowicz ("Plaintiff"), individually and on behalf of all others similarly situated, brings this collective action for violations of the Fair Labor Standards Act, 29 U.S.C.A. § 201, *et seq.* ("FLSA") against Defendant, The Chemours Company FC, LLC ("Defendant"), and states as follows:

### JURISDICTION AND VENUE

1. This Court has original jurisdiction to hear this Complaint and to adjudicate the claims stated herein pursuant to 28 U.S.C. Section 1331, because this action asserts federal claims arising under the FLSA, 29 U.S.C. Section 201, *et seq*.

2. Venue is proper in this District, pursuant to 28 U.S.C. Section 1391, because the Plaintiff resides in this District, and because a substantial portion of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

3. Plaintiff David Wojciehowicz is a resident of the State of West Virginia and over the age of 18.

4. Plaintiff began his employment as a mechanic at the production facility/chemical plant located in Belle, West Virginia that was formerly operated by Dupont, and continued his employment at this facility upon Defendant assuming ownership in or around 2015. Plaintiff remained employed in this position until November of 2019.

5. Defendant, The Chemours Company FC, LLC, is a foreign, for-profit limited liability corporation operating chemical manufacturing plants and production sites throughout the country, with its central corporate headquarters located at 1007 Market Street, Wilmington, Delaware, 19899.

6. Defendant is subject to the jurisdiction of the FLSA, and has engaged in interstate commerce with earnings exceeding $500,000 in the prior three (3) years.

7. Plaintiff and those similarly situated are current and former employees of Defendant within the meaning of the FLSA, and Defendant employed them within three (3) years of the date this Complaint was filed.

## FACTUAL ALLEGATIONS

8. Plaintiff and those similarly situated worked for Defendant in various employment positions at its chemical manufacturing plants and production sites throughout the country.

9. The employment positions of the Defendant's employees similarly situated to the Plaintiff include, without limitation: mechanics, electricians, technicians, operators and/or other laborer positions.

10. Those employees similarly situated to the Plaintiff worked for Defendant in eight (8), ten (10), and twelve (12)-hour shifts.

11. On information and belief, the following allegations apply to those similarly situated to the Plaintiff with regard to the Defendant's common employment practices and procedures of failing to pay overtime wages for hours worked before and after their scheduled shifts.

12. Plaintiff worked ten (10)-hour shifts four (4) times per week as a mechanic at the Defendant's production facility located in Belle, WV.

13. Plaintiff's officially scheduled work shifts were typically Monday through Thursday, 7 a.m. to 5 p.m.

14. However, Plaintiff had to arrive at the Defendant facility's locker room area between approximately 6:30 and 6:40 a.m.

15. Plaintiff arrived at the locker room before his 7 a.m. shift began because the necessity that he change into his work uniform and don his protective gear before traveling to the work site, which was located at a different area of the Defendant's facility.

16. Plaintiff's work uniform and protective gear were required to be kept at the locker room because these items were exposed to dangerous toxic chemicals while he was working at the Defendant's facility.

17. Employee work uniforms were laundered and their protective gear decontaminated at the conclusion of each shift consistent with job safety and health requirements.

18. Indeed, according to Defendant's written policy, "[u]nder no circumstances should an employee take potentially contaminated clothing home or to an off-site business

establishment. Removal of potentially contaminated clothing by employees from the site is strictly prohibited."

19. The nature of the work performed by Defendant's employees renders all clothing worn and protective gear donned while working as potentially contaminated.

20. After changing into his work uniform and donning his protective gear at the locker room, Plaintiff traveled to the work site prior to 7 a.m. to begin his official work shift.

21. Once his work shift ended at 5 p.m., Plaintiff then was required to travel back to the locker room at the Defendant's facility.

22. Once arriving back at the locker room, the Plaintiff was required to remove his contaminated work uniform and protective gear; deposit these items in an assigned container; and shower to remove any contamination from his body.

23. It was only after this occurred that Plaintiff was able to leave the Defendant's facility – usually between approximately 5:20 and 5:30 p.m.

24. Moreover, both when Plaintiff arrived for work in the morning before 7 a.m. and when he left in the evening after 5 p.m., he was required to electronically badge in and out of the facility at a gate located near the locker room at the Defendant's facility.

25. Defendant's written policy recognizes that time sheets generated from "gate log" information establishes a reliable method for determining the actual hours worked by the Plaintiff and similarly situated employees.

26. However, Plaintiff and those similarly situated were not and/or have not been paid their lawfully required overtime wages – or any wages - for actual hours worked before 7 a.m. and after 5 p.m.

## THE FLSA

27. The FLSA has a broad remedial purpose with the central aim to achieve certain minimum labor standards.

28. To accomplish this purpose, the FLSA establishes baseline standards through federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract.

29. Among the bedrock principles of the FLSA is the requirement that employers pay employees for all hours worked.

30. Accordingly, pursuant to the FLSA, employers cannot employ any worker for a workweek longer than forty (40) hours unless such employee receives compensation for his employment at a rate not less than one and one-half times (1.5x) the regular rate at which he is employed.

31. In other words, employers are required to compensate employees for time in excess of forty (40) hours with overtime compensation, which is paid at a rate of one and one-half times (1.5x) the employee's regular rate of pay.

32. Under the FLSA, "hours worked" includes time when an employee is required to be on duty, but are not limited to active productive labor and include circumstances that are not necessarily productive work time.

33. The continuous workday rule of the FLSA establishes that the compensable workday begins with the first principal activity of a job and ends with the employee's last principal activity.

34. An employee's act is necessary under the FLSA to a principal work activity if that act is required by law, by company policy, or by the nature of the work performed.

35. Under the FLSA, activities performed either before or after the regular work shift, whether on or off the production line or at an official work site, are compensable if those activities are an integral and indispensable part of the principal activities for which covered workers are employed.

36. At the time of the events in question, it was well-established that changing clothes and donning and doffing work uniforms and protective gear before and after a work shift, and showering after the work shift before leaving the Defendant's facility, were an integral and indispensable part of the principal activity of employment with the Defendant, as the Plaintiff and those similarly situated worked in a manufacturing plant that caused exposure to dangerous chemicals.

37. Moreover, the travel to and from the locker room to the work site is compensable under the FLSA, because the Plaintiff and those similarly situated were required to change into their work uniform and don their protective gear at the Defendant's locker room before traveling to the work site.

38. At the end of their shift, Plaintiff and those similarly situated were required to travel back to the locker room at the Defendant's facility; remove their contaminated work uniform and protective gear; deposit these items into an assigned container; and then shower before leaving the Defendant's facility.

39. However, Plaintiff and those similarly situated were not paid overtime wages – or any wages at all - for this time they worked before and after their scheduled shifts.

40. Indeed, the Defendant's own written policy edict confirms this fact: "Employees are required to report to their work are [*sic*] dressed and ready to begin work at the start of their shift. They are to allow sufficient time to change clothes, put away their personal belongings,

and report to their assigned area **prior** to the start of their shift. **Employees are not paid for this time**."

41. This is despite the Defendant's recognition of the FLSA's applicability: "Q. Do we get paid for time worked outside of our schedule? A. **Yes, as required by the Fair Labor Standards Act**."

42. On information and belief, the Defendant's decisions, and actual policies and practices in failing to pay overtime wages for time worked before and after scheduled shifts, is a uniform single plan implemented at all of its chemical manufacturing plants and production facilities nationwide.

43. On its website, Defendant lists its chemical manufacturing plant/production site located in Belle, West Virginia as among fifteen (15) others it operates across the country. Plaintiff's paycheck is issued from the Defendant's central corporate headquarters located at 1007 Market Street, Wilmington, Delaware, 19899. This is also the sole mailing and office address identified by the Defendant on the West Virginia Secretary of State website.

## COLLECTIVE ACTION ALLEGATIONS

44. Plaintiff submits that there are others similarly situated to himself who, under the same or similar circumstances he experienced while employed by the Defendant, were denied overtime wages at a rate of 1.5x their regular rate of pay for hours worked in excess of 40 per week.

45. On information and belief, those employees of the Defendant similarly situated to the Plaintiff during the proposed three (3) year class period numbers in the hundreds and perhaps thousands nationwide.

46. Plaintiff and all other similarly situated employees perform work in chemically hazardous production facilities operated by the Defendant throughout the country.

47. The Defendant's employees similarly situated to the Plaintiff worked at the Defendant's facilities situated at, without limitation, the following locations in the United States: Belle, West Virginia; Carlin, Nevada; Deepwater, New Jersey; Ingleside, Texas; Pass Christian, Mississippi; El Dorado, Arkansas; Fayetteville, North Carolina; Pascagoula, Mississippi; Bradford County, Florida; La Porte, Texas; Louisville, Kentucky; Millington, Tennessee; New Johnsonville, Tennessee; Parlin, New Jersey; Washington, West Virginia; and Wayne County, Georgia.

48. Accordingly, Plaintiff brings this suit on behalf of himself and all other similarly situated employees of the Defendant, and proposes the following collective description: **All persons who perform(ed) work for Defendant as mechanics, electricians, technicians, operators and/or other laborer positions at its chemical manufacturing plants and production sites across the country, who were required to don/doff work uniforms or protective gear and/or shower on the Defendant's premises before or after their shifts without being paid for such activities in the past three years.**

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT

49. Plaintiff re-alleges and incorporates by reference all of the above paragraphs as if fully set forth herein.

50. The FLSA requires employers to pay employees wages at a rate no less than one-and-a-half times (1.5x) their regular hourly rate of pay for all hours worked in excess of forty (40) in individual work weeks.

51. Defendant is an "employer" of the Plaintiff and those similarly situated within the meaning of the FLSA.

52. Defendant is an "enterprise" engaged in interstate commerce as defined by the FLSA.

53. Plaintiff and those similarly situated worked more than forty (40) hours in the workweeks going back three (3) years from the filing of this Complaint, and did not receive overtime compensation for these hours worked as required by the FLSA.

54. Defendant has willfully violated the FLSA and is liable for wages for a three (3) year period of time preceding the filing of this complaint. Defendant has known for the past three (3) years that the Plaintiff and similarly situated employees were entitled to compensation for the overtime hours worked before and after their scheduled shifts.

55. Defendant did not make a good faith effort to comply with the FLSA and owes Plaintiff and those similarly situated overtime wages for such hours worked over the past three (3) years, as well as liquidated damages of an equal sum of all wages owed.

56. Defendant knew that the Plaintiff and those similarly situated were working overtime hours, yet willfully refused to pay Plaintiff and all similarly situated employees overtime pay at one and a half times their regular rate of pay for all overtime hours worked.

57. Because of these unlawful wage practices, which have continued in the past three years up through the present, Plaintiff and those similarly situated employees of the Defendant have suffered lost wages and additional damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf and all of those similarly situated employees of the Defendant, requests from this Court:

a. An order conditionally certifying this proceeding as a collective action under 29 U.S.C.A. § 216(b);

b. Appointment of the Plaintiff as the collective action representative;

c. Appointment of the undersigned as attorneys of record for the collective action;

d. An Order requiring production of the contact information, including phone numbers and addresses, last known email addresses, work locations, employment positions, and dates of employment, of all Defendants' current and former employees similarly situated to the Plaintiff that fit the proposed collective description;

e. Authorization for the issuance of a notice to all similarly situated former and current employees of Defendant that apprises the putative class and notifies them of the pendency of this action, and provides them with the opportunity to assert timely FLSA claims by the filing of individual consent to join and/or opt-in forms;

f. Judgment finding that Plaintiff and those similarly situated are entitled to overtime pay at one and a half times (1.5x) their regular rate for three (3) years prior employment with the Defendant and up until the present;

g. Judgment against the Defendant finding it violated the FLSA;

h. Judgment against the Defendant finding it acted willfully and in bad faith;

i. Award of monetary damages for unpaid wages;

j. Award of monetary damages for liquidated damages under the FLSA;

k. Special award to the Plaintiff for service as the collective action representative;

l. Award of reasonable attorneys' fees, costs, and expenses under the FLSA; and

m. Such other equitable or legal relief the Court should deem necessary and just.

**PLAINTIFF DEMANDS A JURY TRIAL**

**Respectfully submitted,**
**David Wojciehowicz,**
**Plaintiff,**
**By Counsel,**

<u>*/s/ Sean W. Cook*</u>
Sean W. Cook (WVSB #10432)
WARNER LAW OFFICES, PLLC
227 Capitol Street
Post Office Box 3327
Charleston, West Virginia 25333
Telephone: (304) 345-6789
Facsimile: (304) 344-4508

*Attorneys for the Plaintiff*