IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

DAVID WOJCIEHOWICZ,

          Plaintiff,

v.                                  CIVIL ACTION NO.  2:20-cv-00355

THE CHEMOURS COMPANY FC, LLC,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendant's Motion for Summary Judgment* (Document 24), the *Memorandum of Law in Support of Defendant's Motion for Summary Judgment* (Document 25), the *Plaintiff's Response to Defendant's Motion for Summary Judgment* (Document 31), the *Defendant's Reply in Support of Its Motion for Summary Judgment* (Document 36), and all exhibits.

The Court has also reviewed the *Plaintiff's Motion for Conditional Certification as a Collective Action and Additional Relief* (Document 26), the *Supplement to Motion to Conditionally Certify Collective Action Containing Exhibits* (Document 27), the *Defendant's Response in Opposition to Plaintiff's Motion for Conditional Certification as a Collective Action and Additional Relief* (Document 30), and the *Plaintiff's Reply to Defendant's Memorandum in Opposition to Plaintiff's Motion for Conditional Certification as a Collective Action* (Document 35), together with all attached exhibits.

In addition, the Court has reviewed the *Defendant's Motion to Strike Affidavits* (Document 28), the *Memorandum of Law in Support of Defendant's Motion to Strike Affidavits* (Document

1

29), the *Plaintiff's Response to Defendant's Motion to Strike* (Document 34), and the *Reply in Support of Defendant's Motion to Strike Affidavits* (Document 37), as well as all attached exhibits.

The Court finds that the motion to strike should be denied, the motion for summary judgment should be granted, and the motion for class certification terminated as moot.

**FACTS**

The Plaintiff, David Wojciehowicz, brings this complaint alleging violations of the Fair Labor Standards Act (FLSA) on behalf of himself and all those similarly situated. He began working for DuPont at a chemical plant in Belle, West Virginia, in June 2011. He was employed as a general maintenance mechanic, and he has also worked as a crane operator and draftsman at the Belle plant. The Defendant, Chemours, took ownership of the plant in 2015. Although it has since sold the plant, he still works there under the new ownership.

When Mr. Wojciehowicz began his employment, written policy issued by Dupont established working hours of 7 a.m. to 5 p.m. for his shift, with a half-hour paid lunch, four days per week. However, sometime in 2012 or 2013, management verbally informed employees, including Mr. Wojciehowicz, that they would receive a half hour *unpaid* lunch break and hours would be 7 a.m. to 5:30 p.m. That continued to be the schedule after Chemours took over the facility. Although there was no written change to the policy, Mr. Wojciehowicz testified that he was aware of the change in practice and had discussed his concerns about it with management without success.

Employees entered and exited the Belle facility through a badged turnstile that recorded the time. Those records were not used to generate timesheets for pay but could be used to confirm employees' timesheets if questions arose. Employees were expected to be at their work location

and dressed in company-provided personal protective equipment (PPE) by their scheduled start time. Worn, potentially contaminated PPE was required to be placed in a designated area to be cleaned and was not to be removed from the site.

Mr. Wojciehowicz typically arrived five to ten minutes before his 7 a.m. start time, changed into his PPE, and drove or rode in a company vehicle to the location where a safety meeting was held. When he arrived only three or six minutes early, he would be slightly late for the safety meeting. When he arrived twenty minutes early, he had extra time and could walk between the locker room and the work site. Based on his testimony regarding the timing and when he would be late, it appears that donning his PPE and getting to the meeting took approximately ten to fifteen minutes. His half-hour lunch break was scheduled at the convenience of Chemours, and he sometimes ate a packed lunch in a breakroom and sometimes left the site to get a hot lunch. At the end of the day, he put away tools, showered, changed, left his used PPE in a designated container to be cleaned, and usually badged out of the facility between 5:15 and 5:20 p.m. He explained that he and other employees typically left at about 5:18 based on an understanding that it would be counted as a complete shift because time was calculated on 12-minute blocks. Other employees described their schedules similarly.

A representative for Chemours testified that employees at the Belle plant were permitted to bring clean PPE home and could dress prior to arriving at the facility. Mr. Wojciehowicz and the other employees who provided sworn statements did not appear to have received clear instructions to that effect, and they indicated that they always donned their PPE at Chemours prior to starting their shifts. Mr. Wojciehowicz indicated that he knew of a couple of people, including a supervisor, who "ben[t] the rules" to bring clean uniforms home and arrived already in their work

3

gear in the morning. (Wojciehowicz Dep. at 21::10-16, att'd as Def.'s Ex. C, Document 24-3.) Chemours did not pay employees for time spent donning PPE. Employees were required to change at the end of the day to leave worn PPE for laundering and were provided paid time to do so.[1]

## MOTION TO STRIKE

The Plaintiff filed his motion for class certification on Friday, July 9, 2021, and filed the exhibits on Tuesday, July 13, 2021, indicating that a technological issue had delayed the entry of the exhibits on the docket. The Defendant urges the Court to strike the exhibits, arguing that the Plaintiff has not established good cause for their untimeliness and that it was prejudiced because it did not have access to the evidence in support of the Plaintiff's filing for several days. It further argues that the Plaintiff's affidavit should be stricken as a sham affidavit because it conflicts with his deposition testimony.

The Plaintiff argues that he had good cause for the brief delay and diligently worked with the Court's IT staff to remedy the filing issue as soon as his counsel discovered the error. He further argues that the Defendant's claim of prejudice is unsupported by any facts and not credible, given that the Defendant had eleven days of the response period with access to the documents. Because the motions cited the affidavits, he also contends that their existence and general nature would not have been a surprise to the Defendant. He further argues that any inconsistency between the affidavit and deposition testimony can be appropriately explored on cross examination at trial.

---

1 In the briefing, Chemours suggests that it was not required to pay for doffing and showering time because showers were not required by the company.

The Court finds that the motion to strike should be denied.[2] The three-day delay in access to the exhibits due to a technological error did not cause any specific prejudice. The Plaintiff's brief referenced the exhibits. Counsel for the Defendant could have contacted Plaintiff's counsel to seek the unfiled exhibits if lacking access over the weekend actually inhibited work on a response. The Defendant's thorough response suggests that it had adequate time to review the filings. The Court further declines to strike the Plaintiff's affidavit, although for purposes of establishing the undisputed facts, the Court will rely on the Plaintiff's deposition testimony that more thoroughly explores questions regarding his schedule and understanding of the Defendant's policies, to the extent that testimony conflicts with the affidavit.

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict

---

[2] The Court notes that the Plaintiff incorporated the arguments and exhibits for the motion for class certification in his response to the motion for summary judgment, filed on July 23, 2021, and the Court considered them in that context given the rulings contained herein. For purposes of the motion for summary judgment, the Defendant had several extra days of access to the exhibits prior to the response deadline.

in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be

6

granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

## DISCUSSION

Chemours argues that it is entitled to summary judgment because the facts establish that Mr. Wojciehowicz did not work more than 40 hours per week. It argues that he was fully relieved for his half-hour unpaid lunch break and had a usual schedule of 7 a.m. to 5:30 p.m., four days per week. It contends that the time spent donning protective gear is not compensable because its informal policy or practice permitted employees to take clean PPE home and dress off-site and showering at the end of shift was not required. However, even if such time is compensable, Chemours contends that the badge logs indicate that Mr. Wojciehowicz consistently badged out of the facility 12-15 minutes early, while arriving only 5-10 minutes before his scheduled start time. It argues that the badge swipes do not reflect actual working hours but do establish the earliest time the Plaintiff could have begun work and the latest time he could have worked on any given day. Therefore, it argues that he "falls short of that 40 hours per workweek threshold required for an obligation to pay overtime." (Def.'s Mem. at 12.)

Mr. Wojciehowicz argues that he is entitled to overtime pay for "hours worked before 7 a.m. and after 5 p.m." based on the written schedule in effect when he was hired. (Pl.'s Resp. at 4.) He argues that the 2001 written policy regarding work hours remained in effect throughout his employment with Chemours, as no new written policy was issued during that time. In his view, Chemours should not be permitted to offset a lunch break that, per written policy, was paid time, against extra hours spent donning and doffing PPE. He contests Chemours' assertion that unwritten policy permitted employees to don their PPE at home prior to arriving on site,

7

summarizing evidence suggesting that employees were discouraged from taking PPE offsite. He further argues that even if employees were not required to don their PPE on site or to shower before leaving, they were permitted to do so, and the FLSA requires compensation for time an employee is permitted to work, even if not required.

The FLSA established a minimum wage and payment of at least one and half times the regular rate of pay for workweeks in excess of 40 hours. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 25, (2005). The continuous workday rule "means that the 'workday' is generally defined as 'the period between the commencement and completion on the same workday of an employee's principal activity or activities.'" *Id.* at 28 (quoting 29 C.F.R. §790.6(b)). Time spent donning and doffing protective equipment that is "integral and indispensable to the employees' work" and walking between the location for donning and doffing and the worksite is compensable. *Id.* at 30. It is long established that donning and doffing protective equipment necessary to work with dangerous and toxic materials is "an integral and indispensable part of the principal activity of the employment." *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956) (finding that employees in a battery plant were entitled to compensation for time donning and doffing work clothing laundered at the plant and showering to remove any contaminates). However, "the continuous workday does not include time spent during a 'bona fide meal period.'" *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 363 (4th Cir. 2011) (quoting from *Sepulveda v. Allen Family Foods, Inc.*, 591 F.3d. 209, 216 (4th Cir. 2011).

The facts presented by the parties establish that employees were required to wear PPE provided by Chemours in order to work with chemicals. They were required to leave used PPE at the Belle plant to be laundered. There is a factual dispute regarding whether employees could

8

bring clean PPE home to don prior to driving to work, but the employees' statements suggest that very few employees considered such an option. Further, the Fourth Circuit has upheld a finding that a similar policy was illogical, onerous, and impractical, concluding that employees did "not have a meaningful option to don and doff their protective gear at home" after a chicken processing plant enacted a policy allowing employees to take clean gear home. *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 368 (4th Cir. 2011). Given that employees had to leave their worn PPE at the end of the workday and change into street clothes, bringing clean PPE home rather than changing on arrival would be similarly illogical. It would save little time even in the morning, when employees would need to stop at the locker room to drop off their clean street clothes. The precedent and the undisputed facts establish that donning and doffing time under these circumstances is compensable.

However, the Plaintiff's claims rest largely on his stance that Chemours[3] could not verbally change the work schedule to eliminate his previous paid lunch break and extend the workday commensurately. His deposition establishes that he was aware that the policy had changed, a 30-minute lunch break was no longer paid, and his shift ended at 5:30 rather than 5:00. He is unable to cite any authority for the proposition that such a change in schedule must be made in writing, and there is no genuine factual dispute as to the existence of the change and his knowledge that it had occurred. The facts presented in this case establish that he received a bona fide 30-minute unpaid lunch break, which is properly excluded from the calculation of his work hours.[4]

---

3 The timing suggests that the change in schedule occurred while the plant was owned by Dupont, prior to the spinoff in which Chemours took control.
4 The Plaintiff relies on *Smiley v. E.I. Dupont De Nemours and Co.*, 839 F.3d 325 (3rd Cir. 2016), which involved similar facts and similar written policies. However, in *Smiley,* there was no evidence that the policy had changed to

Based on the Plaintiff's testimony and taking the facts in the light most favorable to the Plaintiff, it took approximately 10 - 15 minutes to don his PPE and get to his 7 a.m. safety meeting, though he often badged in less than 10 minutes early and arrived at the safety meeting slightly late. Arriving earlier left him extra time to walk to the safety meeting but was not necessary for the tasks required by his employer. He typically left about 12 minutes early. Excluding the 30-minute lunch break, Mr. Wojciehowicz did not typically work more than his 10-hour shift or his 40-hour workweek.

In his response to the motion for summary judgment, the Plaintiff argued that the records reflecting the times he badged in and out of the facility indicate that for at least the two-week period from October 21 to October 31, 2019, he exceeded 40 hours per week. As the Defendant points out, the badge times may not perfectly correspond with the times that employees began or ceased work. In addition, based on the Court's calculations for eight workdays in the period identified by the Plaintiff, he arrived a total of about 71 minutes before his 7:00 a.m. start time, but left a total of almost 99 minutes before his scheduled 5:30 p.m. end time. Because his testimony indicates that he sometimes ate a packed lunch in the break room, the Court did not consider the badge entry and exit times in the middle of the day, and instead assumed that he received a 30-minute lunch break each day. Thus, although the evidence suggests that Chemours improperly failed to compensate employees for time spent donning required protective gear, the evidence indicates that this Plaintiff had a practice of leaving slightly early that resulted in a daily workday, including donning and doffing time, within the appropriate parameters for a 40-hour

---

establish an unpaid lunch break—Dupont sought to offset additional time against the *paid* lunch break, and the Third Circuit rejected the theory that the FLSA permitted such offsets. This case does not present an issue of offsets.

workweek. In short, Mr. Wojciehowicz has not produced evidence that would permit a factfinder to determine that he worked more than 40 hours per week such that he was entitled to overtime compensation. *See Monahan v. Cty. of Chesterfield, Va.*, 95 F.3d 1263, 1265 (4th Cir. 1996) ("If the employee has been paid for all non-overtime hours at a lawful rate pursuant to an employment agreement to which that employee has impliedly or expressly agreed, and the employee has also been paid at a lawful rate for all overtime hours, then the employee does not have a claim for an hourly compensation dispute under the FLSA."). Therefore, the Court finds that Chemours' motion for summary judgment must be granted.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Defendant's Motion to Strike Affidavits* (Document 28) be **DENIED**, the *Defendant's Motion for Summary Judgment* (Document 24) be **GRANTED**, the *Plaintiff's Motion for Conditional Certification as a Collective Action and Additional Relief* (Document 26) be **TERMINATED as moot**, and all remaining pending motions be **TERMINATED as moot**.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and to any unrepresented party.

ENTER: September 17, 2021

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA